In the
**UNITED STATES DISTRICT COURT**
for the **SOUTHERN DISTRICT OF INDIANA**,
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **ANTONIO L. NAPIER**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| *vs*. | ) CAUSE NO. 1:09-cv-527-SEB-DML |
| | ) |
| **MICHAEL J. ASTRUE**, Commissioner of | ) |
| Social Security, | ) |
| | ) |
| Defendant. | ) |

## E N T R Y

Tami Napier brought this action on behalf of her minor son, Antonio Napier ("Child"), to obtain judicial review of the defendant Commissioner of Social Security's denial of her application for disability benefits for her son. Judicial review of the Commissioner's factual findings is deferential: courts must affirm if the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Substantial evidence is more than a scintilla, but less than a preponderance, of the evidence. *Wood v. Thompson*, 246 F.3d 1026, 1029 (7th Cir. 2001). If the evidence is sufficient for a reasonable person to conclude that it adequately supports the Commissioner's decision, then it is substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Carradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). This limited scope of judicial review follows the principle that Congress has designated the Commissioner, not the courts, to make disability determinations:

In reviewing the decision of the ALJ, we cannot engage in our own analysis of

1

> whether [the claimant] is severely impaired as defined by the SSA regulations. Nor may we reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute our own judgment for that of the Commissioner. Our task is limited to determining whether the ALJ's factual findings are supported by substantial evidence.

*Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). *Carradine*, 360 F.3d at 758. While review of the Commissioner's factual findings is deferential, review of his legal conclusions is *de novo*. *Richardson*, *supra*. After considering the parties' arguments and reviewing the Record, and for the reasons set forth below, we affirm the Commissioner's decision.

An individual under the age of eighteen is eligible for disability benefits under the Supplemental Security Income ("SSI") program of the Social Security Act, 42 U.S.C. §1381 *et seq.*,[1] if he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I). A physical or mental impairment is one that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. *Id*. § 1382c(a)(3)(D). In determining whether impairments are disabling, the combined effect of all of a child's impairments must be considered, without regard to whether any single impairment alone is of disabling severity. 42 U.S.C. § 1382c(a)(3)(G).

---

[1] Two programs of disability benefits are available under the Social Security Act: Disability Insurance Benefits ("DIB") for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423, *et seq.*, and Supplemental Security Income benefits ("SSI") for uninsured individuals who meet income and resources criteria, 42 U.S.C. § 1381, *et seq*. A minor can be eligible for disability benefits under only the SSI program.

By regulation, the Social Security Administration ("SSA") has determined that satisfaction of one of the Listings of Impairments, 20 CFR Part 404, Subpart P, Appendix 1, Part B, fulfills the statutory requirement that a child's impairment or combination of impairments "results in marked and severe functional limitations." The Listing of Impairments, Part B, is a compilation of medical conditions, divided into fourteen major body systems, that the SSA has pre-determined are disabling in children. 20 CFR § 416.925. In general, each listed condition is defined by two sets of criteria: diagnostic findings that substantiate the existence of a listed condition and sets of related functional limitations that substantiate the condition's disabling severity. *Id.* A child's impairment or group of impairments can satisfy a listed condition in any of three ways: by meeting all the listed criteria for the condition, 20 CFR § 416.925(c)(3); by medically equaling the criteria, *id.* § 416.925(c)(5); or by functionally equaling the criteria, *id.* § 416.926a(a).

A child's impairment *meets* a listed condition only when it satisfies all of the criteria of the listing. 20 CFR § 416.925(c)(3) and (d). A child's impairment *medically equals* a listed condition when it is at least equal in severity and duration to the criteria of a listed condition. *Id.* § 416.926(a). Medical equivalence will be found when (1) the child's impairment, though listed, is lacking one or more of the medical or severity criteria, but other findings related to the impairment are of at least equal medical significance to the listed criteria, *id.* § 416.926(b)(1); (2) the child's impairment is not a listed condition but the impairment's medical and severity findings are of at least equal medical significance to a closely analogous listed condition, *id.* § 416.926(b)(2); or (3) the child has a combination of impairments, no one of which equals a listed condition, but the impairments' medical and severity findings are of at least equal medical

3

significance to a listed condition, *id*. § 416.926(b)(3).

A child's impairment or combination of impairments will *functionally equal* a listed condition when it is of listing-level severity, meaning that it results in a "marked" limitation in two domains of functioning or an "extreme" limitation in one domain. 20 CFR § 416.926a(a). The domains of functioning are (1) acquiring and using information, (2) attending to and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for self, and (6) health and physical well-being, *id*. § 416.926a(b)(1), and SSA has defined constituent activities within each domain and their normal levels of performance at different age groups, *id*. § 416.926a(g)-(l). In general, a "marked" limitation exists when a child's impairment or combination of impairments "interferes seriously with [her] ability to independently initiate, sustain, or complete activities" within a particular domain. It is a limitation that is "more than moderate" but "less than extreme," and is the level of functioning that is expected with scores that are more than two, but less than three, standard deviations below the mean on standardized tests. *Id*. § 416.926a(e)(2). An "extreme" limitation is one that interferes "very seriously" with a child's ability to perform activities within a domain. It is "more than marked," and is the level of functioning that is expected with scores at least three standard deviations below the mean on standardized testing. *Id*. § 416.926a(e)(3).

SSA has established a three-step sequential process for evaluating child-disability claims. 20 CFR § 416.924. If disability eligibility can be determined at any step in the sequence, an application will not be reviewed further. *Id*. § 416.924(a). At the first step, if the child is engaged in substantial gainful activity, *i.e.*, is earning money, then he is not disabled. *Id*. §

417.924(b). At the second step, if the child's impairments are not severe, then he is not disabled. A severe impairment or combination of impairments is one that causes "more than minimal functional limitations." *Id*. § 416.924(c). Third, the child's impairments, either singly or in combination, must satisfy the criteria of at least one of the conditions included in the Listing of Impairments. *Id*. § 416.924(d). If a child's impairments pass all three steps, and satisfies the duration requirement, then he is deemed disabled.

An application for benefits, together with any evidence submitted by the applicant and obtained by the agency, undergoes initial review by a disability examiner and a physician or other appropriate medical specialist. If the application is denied, the applicant may request reconsideration review, which is conducted by different disability and medical experts. If denied again, the applicant may request a hearing before an administrative law judge ("ALJ").[2] An applicant who is dissatisfied with the decision of the ALJ may request SSA's national Appeals Council to review the decision. If the Appeals Council either declines to review or affirms the decision, then the claimant may file an action in district court for judicial review. 42 U.S.C. § 405(g). If the Appeals Council declines to review a decision, then the decision of the ALJ becomes the final decision of the Commissioner for judicial review.

Ms. Napier filed an application for benefits for her son in February 2006. The application was denied on initial and reconsideration reviews. A hearing before an ALJ was held

---

[2] Initial and reconsideration reviews in Indiana are performed by an agency of the state government — the Disability Determination Bureau, a division of the Indiana Family and Social Services Administration — under arrangement with the Social Security Administration. 20 C.F.R. Part 404, Subpart Q (§ 404.1601 *et seq.*). Hearings before ALJs and subsequent proceedings are conducted by personnel of the federal SSA.

in July 2008 at which a licensed clinical psychologist, Dr. Pitcher, testified as a medical expert. Child was not represented by counsel during the application and administrative-review stages, but he was represented by present counsel at the hearing. The ALJ denied Child's application in October 2008 and the Appeals Council denied Child's request for review in February 2009.[3]

At the first step, the ALJ found that Child was not engaged in substantial gainful activity. At the second step, she found that Child has the following severe impairments: major depressive disorder, Attention-Deficit/Hyperactivity Disorder ("ADHD"), asthma, and a sleep disorder. At the third step, she found that his impairments, individually and in combination, did not meet or medically equal any of the listed impairments. She evaluated his impairments under listings 103.03 (asthma), 112.04 (mood disorders), and 112.11 (ADHD). The ALJ also found that Child's impairments did not functionally equal any of the listings. She evaluated the credibility of reports describing the extent of his subjective symptoms according to the SSA's standard. 20 CFR § 416.929; SSR 96-4p; and SSR 96-7p. The ALJ found that Child had less-than-marked limitations in four of the six domains of functioning and no limitation in the other two. Because Child did not meet or equal any of the Listings, the ALJ found that he was not disabled and denied his application for SSI benefits. When the Appeals Council denied Child's request for review, the ALJ's decision became the final decision of the Commissioner on Child's application and the one that we review here.

Child asserts three discrete errors in the ALJ's decision.

---

[3] Child was born in October 1992, making him 13 years old when his application was filed and 15 years old when the hearing was held.

**Conduct disorder.** In her decision, the ALJ noted that Child's mental-health history contains several diagnoses but that Dr. Pitcher, the psychologist who testified at the hearing as the impartial medical expert, opined that depression and ADHD best describe his impairments. (R. 24). The ALJ also wrote that, although Child had been diagnosed with "conduct disorder," it is a disorder that is not recognized by the American Psychiatric Association ("APA") or the SSA. (*Id*.) Child argues that the ALJ was mistaken about the diagnosis not being recognized by the APA; that he, therefore, mistakenly dismissed the diagnosis and failed to consider it; and that the diagnosis is properly evaluated under Listing 112.08 for personality disorders, which the ALJ did not consider.

The diagnosis of "[Code] 312.82 Conduct Disorder, Childhood Onset Type, Moderate Severity" appears in a May 2008 Individual Treatment Plan prepared by the Youth Opportunity Center where Child had been living for about a year by that time after his removal from the home. (R. 25, 239, 240). The other Axis I[4] clinical diagnoses appearing on the Plan are ADHD, Intermittent Explosive Disorder, and Sexual Abuse of a Child. (R. 240). Child did not assert that the diagnosis of conduct disorder appears in any other medical source, although he has had many evaluations and diagnoses over the years. The ALJ asked Dr. Pitcher about the diagnosis

---

[4] This is part of the American Psychiatric Association's multi-axial assessment system which is designed to "facilitate[] comprehensive and systematic evaluation with attention to the various mental disorders and general medical conditions, psychosocial and environmental problems, and level of functioning that might be overlooked if the focus were on assessing a single presenting problem." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders*, *Fourth Edition*, *Text Revision* ("DSM-IV-TR") at 27 (2000). Five axes are included: (1) Axis I are clinical disorders and other conditions that may be a focus of clinical attention; (2) Axis II are personality disorders and mental retardation; (3) Axis III are general medical conditions; (4) Axis IV are pyschosocial and environmental problems; and (5) Axis V are the Global Assessment of Functioning ratings. *Id*.

of conduct disorder:

> Q What about — at the Youth Opportunity Center, this is Exhibit B, we have a list of potential diagnoses. Conduct disorder, is that a diagnosis?
>
> A It's not a diagnosis. No. It's also a result, or perhaps — it can be a result of depression, or it just can be a result of environmental stressors.
>
> Q Uh-huh. But it's not a listing recognized by the American Psychiatric Association.
>
> A No. Or by the Social Security Administration.

(R. 505). Dr. Pitcher related Child's behavioral disorders to his depression and/or his ADHD.[5] (R. 505-07). The ALJ accepted Dr. Pitcher's opinion.

Dr. Pitcher and the ALJ were clearly wrong about conduct disorder not being a separate diagnosis recognized by the APA. It is so listed, with full discussion and diagnostic criteria, in the standard catalog of psychiatric disorders compiled and published by the APA. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision* ("DSM-IV-TR"), at 93 (2000).[6] But Child is wrong in assuming that this mistake alone means that the ALJ and Dr. Pitcher either ignored or dismissed the disorder. Both treated it as a resulting symptom or feature of his depression and/or ADHD and evaluated the substance of it accordingly. Child points to no evidence that either the ALJ or Dr. Pitcher denied or

---

[5] Dr. Pitcher's testimony is unclear as to whether she attributed Child's behaviors to his depression or ADHD or both. (R. 505-07). She believed that they were anti-social behavioral features or results of one or both of those diagnoses. Child's other behavioral problems where oppositional defiant disorder, (R. 504), intermittent explosive disorder, (R. 505), and manipulation, (R. 507).

[6] The DSM-IV-TR groups conduct disorder with ADHD in the category "Attention-Deficit and Disruptive Behavior Disorders." DSM-IV-TR at 85. Other disorders in this category are oppositional defiant disorder and disruptive behavior disorder.

8

overlooked the actual behaviors, symptoms, or features represented by the Youth Opportunity Center diagnosis. Child has not shown how he was prejudiced by the ALJ's mistake regarding the APA's recognition of conduct disorder as a diagnosis.

Child also argues that the ALJ erred by failing to evaluate his conduct-disorder condition under Listing 112.08 for personality disorders. However, none of Child's diagnoses listed conduct disorder as an Axis II diagnosis, which is where personality disorders are recorded. DSM-IV-TR at 29. In fact, Child's disorders were diagnosed under only Axis I; anti-social personality *traits* were the only conditions noted under Axis II. (R. 153, 182, 191, 257, 399).

Child has failed to show that the ALJ erred in his evaluation of Child's behavioral and mental problems.

**Credibility of mother's statements.** Child argues that the ALJ failed to expressly state whether she found Child's mother's testimony credible. Child did not present any authority requiring an ALJ to separately articulate a determination of the credibility of each witness's or report's statements describing an applicant's subjective symptoms or limitations. While circumstances that are personal to a particular source can be grounds to discredit that source's statements regarding an applicant's subjective symptoms — *e.g.*, staleness or infrequency of observations, bias for or against — most of the credibility factors provided in the regulations are unrelated to the circumstances of the particular source — *e.g.*, consistency with objective medical evidence, applicants' activities of daily living, medications, or treatments. The ALJ discussed the relevant credibility factors, (R. 24-26), and he expressly found that "the statements concerning the intensity, persistence and limiting effects of the claimant's symptoms are not

9

credible" to the extent that they were inconsistent with a finding that his impairments do not satisfy a listing. (R. 23-24). That is sufficient to establish that the ALJ evaluated all the statements about Child's symptoms, including his mother's, and found them not entirely credible.

In addition, when discussing his credibility determination, the ALJ noted facts that were specific to Child's mother's credibility, including the following. The relationship between Child and his mother was not a good one and deteriorated to the point where he was removed from the home more than once. A residence facility to which Child was removed from the home noted in its assessment that Child's mother was easily agitated and continually devalued Child while idealizing his younger half-brother. A family-counseling assessment noted that Child's mother was positively reinforcing her children to behave negatively and Child's mother admitted at the ALJ's hearing that she did so. The family-counseling facility had concerns about Child's mother's mental health. Child's mother's antipathy toward Child was obvious during the hearing. (R. 25).[7] These observations reasonably support the ALJ's decision not to fully credit Child's mother's statements regarding the nature of his subjective symptoms and limitations; they support the conclusion that Child's mother was not a reliable, dispassionate, or clear-headed observer or witness of her son's condition. In addition, because the ALJ had the opportunity to observe and interact with Child's mother at the hearing, the ALJ's judgments about the mother's credibility based on those observations are virtually unassailable. *Herron v. Shalala*, 19 F.3d

---

[7] In another part of her decision, the ALJ wrote that "[t]he hostility of the claimant's mother toward him was palpable at hearing. It is difficult to believe that any child could flourish in an atmosphere of such hostility and resentment." (R. 30).

329, 335 (7th Cir. 1994).

**Bias.** Child assails the ALJ's judgment and credibility by asserting that she "harbored a reasonably apparent dislike toward the claimant's mother," (Response at 10), "clearly disliked the claimant's mother and blamed her for the claimant's impairments," (*id.* at 12). The Court presumes that the ALJ was unbiased, *see Schweiker v. McClure*, 456 U.S. 188, 195-96 (1982); *Withrow v. Larkin*, 421 U.S. 35, 47 (1975), and the burden is on Child to overcome the presumption, *McClure*, 456 U.S. at 196. None of Child's supporting examples even approaches the standard of showing that the ALJ "displayed deep-seated and unequivocal antagonism that would render fair judgment impossible." *Liteky v. United States*, 510 U.S. 540, 556 (1994); *Keith v. Barnhart*, 473 F.3d 782, 788 (7th Cir. 2007). Therefore, Child has failed to overcome the presumption of fairness and lack of prejudice.

## Conclusion

Child has failed to show error in the ALJ's decision and has failed to show that the ALJ was biased. Therefore, the Commissioner's decision is **AFFIRMED**.

**SO ORDERED.**

09/23/2010

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov